DECISION
{¶ 1} Relator, John A. Maxey, commenced this original action requesting a writ of mandamus that orders respondent Industrial Commission of Ohio to vacate its order denying compensation for permanent total disability and to issue an order that complies with applicable law.
{¶ 2} Pursuant to Civ.R. 53 and Section (M), Loc.R. 12 of the Tenth Appellate District, this matter was referred to a magistrate who issued a decision, including findings of fact and conclusions of law. (See attached Appendix A). In the decision, the magistrate concluded the commission abused its discretion in relying on Dr. Amendt's opinion that relator could operate a foot control with his right foot for one-third of the work day, as that determination was fatally inconsistent with (1) the doctor's findings regarding relator's right foot and (2) his recognition that relator had been compensated for loss of use of his right foot. The magistrate further concluded the vocational assessment conducted by Christy Vogelsang is internally inconsistent in that she purported to apply Dr. Amendt's restrictions to sedentary work, but when she listed job options, six of the eight listed require light strength according to the Dictionary of Occupational Titles. Accordingly, the magistrate determined a limited writ should issue.
{¶ 3} Respondent Industrial Commission has filed objections to the magistrate's decision. In the first objection, the commission contends the report of Dr. Amendt is not internally inconsistent. As the magistrate noted, however, Dr. Amendt assessed a whole body impairment of 15 percent based solely on the right foot, which indicates a substantial impairment of that foot. The magistrate correctly concluded Dr. Amendt's indication on the capacities checklist that relator could operate foot controls with the right foot for up to one-third of the work day is inconsistent with his narrative report finding such a significant impairment of relator's right foot.
{¶ 4} Secondly, the commission contends it did not rely on Dr. Amendt's checklist opinion regarding the foot pedals. In particular, the commission notes the magistrate stated that on remand the commission may rely on the report of Dr. Amendt, but may not rely on his checklist regarding the foot pedals. The commission contends it did not. The staff hearing officer's order, however, states "that the capabilities listed by Dr. Amendt are the capabilities that claimant has as a result of recognized orthopedic conditions in the claim." (May 24, 2001 Order.) To the extent that language suggests the commission relied on the entire checklist, including the section regarding foot pedals, the commission is to disregard that aspect of the checklist when it reconsiders the application for permanent total disability compensation. To the extent the commission ignored that part of the checklist in rendering the May 24, 2001 order, excluding the foot pedal information from the checklist on reconsideration will pose no problem to the commission. In any event, the language of the May 24, 2001 order is sufficiently ambiguous to warrant a limited writ and the magistrate's admonition regarding the checklist.
{¶ 5} Thirdly, the commission notes ¶ 26 of the magistrate's decision in which the magistrate cautioned that Dr. Amendt's opinion on the checklist as to upper extremities must be read in conjunction with his handwritten limitation placed on the form where he indicated relator was prohibited from performing repetitive motions with his hands. The commission asserts it did so. Contrary to the suggestion in the commission's objection, the magistrate did not determine the commission failed to note that provision, but simply cautions that provision must be observed in the commission's reconsideration of the application for permanent total disability compensation.
{¶ 6} Lastly, the commission asserts that even if Ms. Vogelsang's report is removed from evidentiary consideration, the commission properly conducted its own analysis. While the commission correctly notes that its decision includes its own analysis, the commission's order nonetheless concludes that by stating that "based on the above enumerated physical capabilities and the non-medical disability factors, the Staff Hearing Officer finds the claimant is capable of performing sustained remunerative employment. * * * This order is based on the reports of Dr. Amendt and Ms. Vogelsang and the deposition of Ms. Vogelsang taken on 2-7-01." Because we are unable to ascertain to what extent the staff hearing officer's conclusions are premised on the report of Ms. Vogelsang on which the commission admittedly relied, the objection is not persuasive. Accordingly, the commission's four objections are overruled.
{¶ 7} Relator has also filed objections to the magistrate's decision. Relator first objects to the magistrate's conclusion that the commission can rely on other portions of the report of Dr. Amendt. Contrary to relator's contentions, the commission may rely on one part of a report while not relying on another. State ex rel. Fries v. Administrator, Franklin App. No. 01AP-721, 2002-Ohio-3252.
{¶ 8} Relator also contends that the magistrate wrongly concluded Ms. Vogelsang could render a vocational assessment without adopting, in the absence of her own vocational tests, the results of vocational tests others conducted. For the reasons set forth in the magistrate's decision, the objection is not persuasive.
{¶ 9} Lastly, to the extent relator also contends Dr. Amendt's report is inconsistent in stating the use of relator's hands is unrestricted but must be nonrepetitive, the magistrate adequately addressed the argument. For the reasons set forth in the magistrate's decision, relator's contention is not persuasive. Accordingly, relator's objections are overruled.
{¶ 10} Finally, we note the magistrate determined the errors in Ms. Vogelsang's report so tainted its reliability that it should be removed entirely from evidentiary consideration. We modify the magistrate's decision to the extent that we acknowledge some portions of the Vogelsang report may yet retain some viability, such as Ms. Vogelsang's opinion that relator demonstrated academic skills at entry level in prior jobs. Nonetheless, Ms. Vogelsang relied on Dr. Amendt's report, a portion of which has been determined to be inconsistent and cannot serve as evidence on which the commission may rely. Moreover, Ms. Vogelsang rendered an opinion regarding relator's employment future that included, by some recognized standards, light exertion jobs rather than sedentary work. Aware of those potential deficiencies in the Vogelsang report, the commission proceeds at its own risk to the extent it relies on the report on reconsideration of this matter.
{¶ 11} Following independent review pursuant to Civ.R. 53, we find the magistrate has properly determined the pertinent facts and applied the salient law to them. Accordingly, we adopt the magistrate's decision as our own, including the findings of fact and conclusions of law contained in it, with the modification noted. Pursuant to the magistrate's decision, we issue a limited writ of mandamus directing the commission to vacate its denial of permanent total disability compensation, to hold a new permanent total disability compensation hearing, and to issue a new order granting or denying permanent total disability compensation.
Objections overruled; limited writ granted.
BROWN and PETREE, JJ., concur.
 APPENDIX A IN MANDAMUS
{¶ 12} Relator, John A. Maxey, filed this original action in mandamus asking the court to issue a writ compelling respondent Industrial Commission of Ohio to vacate its order denying compensation for permanent total disability ("PTD") and to issue an order that complies with applicable law.
Findings of Fact:
{¶ 13} 1. In 1987, John A. Maxey ("claimant") sustained an industrial injury when he was 35 years old. His worker's compensation claim was allowed for multiple injuries including injuries to the right foot, back, and both knees. The claim was also allowed for bilateral carpal tunnel syndrome and arthrosis of the right shoulder.
{¶ 14} 2. Claimant had polio as an infant, affecting his right leg and requiring surgery, and he wore a brace on the right leg since childhood. However, the brace did not prevent him from working as a maintenance mechanic, the work he was performing when injured.
{¶ 15} 3. In 1999, claimant was awarded permanent partial disability for the loss of use of his right foot.
{¶ 16} 4. In July 1999, claimant filed a PTD application, supported by a medical opinion from Bruce Siegel, D.O., indicating that he was 47 years old, graduated from high school, and could read, write and do basic math. His application indicates that he worked as a mechanic from 1974 to 1987.
{¶ 17} 4. In May 2000, claimant was examined on behalf of the commission by Wayne Amendt, M.D., who reviewed x-rays and a 1990 EMG/NCS, and described surgeries: in 1987 for the injured right foot, a 1988 fusion of the right ankle, a 1990 left carpal tunnel release, and a 1992 right carpal tunnel release. In regard to claimant's former employment, Dr. Amendt noted that claimant was a mechanic whose duties included standing, walking, bending, stooping, squatting, and occasional lifting in excess of 100 pounds, and that claimant worked on a punch press, metal-bending apparatus, and welding machines, which required working in awkward positions. Dr. Amendt further commented:
{¶ 18} "The claimant is forty-eight years old, last worked 07-28-1987, achieved a twelfth grade education in 1971. Previously had been employed farming and construction work, operating a backhoe, installation of water mains as well as a maintenance mechanic from 1974 to 1987. Medical history he is right hand dominant, has an old polio deformity of the right forefoot, has had kidney stones, Bell's palsy right side of the face. He uses a cane held in the right hand and then uses a brace on the right leg. Treatment includes hypertension. Received compensation for loss of use of right foot per SHO order 07-23-1999."
{¶ 19} 5. In addition, Dr. Amendt reviewed medical reports from Drs. Siegel, Hanington, Grefer, Thurman, and Cartwright. He then described in detail his examination of claimant's right foot, legs, knees and spine:
{¶ 20} "On physical examination there is a well healed surgical scar over the dorsal aspect of the right foot over the ankle joint. There are several well healed surgical scars over the heel and over the lateral aspect of the foot. He relates he has a plastic MTP joint in the great toe on the right foot and he has a surgically absent fifth toe from prior surgeries. He has a subtalar fusion from prior surgeries as well. He notes pain over the medial border of the heel that radiates to the plantar surfaces and the lateral aspect of the foot as well. He has shortening of the leg for which he wears an ankle AFO and a 1" build-up on the shoe and heel with a 1 3/4" build-up on the heel, holding the foot in plantarflexion. The medial bar is accompanied by a standard T strap apparatus as well. The ankle does not have a dorsiflex and plantarflexion stop. His right leg has significant atrophy and 1 1/2" shortening from prior polio disease and surgery. The right thigh is also significantly atrophic as well. Right knee range of motion is full from 0 to 135.° Skin is normal bilaterally with no effusion noted. Mild crepitation noted in the left knee with active flexion extension of the joint. He assumes the supine position without roll to side and in this position, straight leg raise is negative with negative sciatic stretch on the left side. Sciatic stretch on the right is not possible. There is no tenderness over the rib cage or the chest wall. He comes to the upright position, assuming a 90° hip flex position in the long-seated position without difficulty. In the standing position, forward flexion is 45,° extension 10,° right and left lateral bending 20° and rotation 20° right and left. Cervical spine range of motion, forward flexion 70°, extension 50°, rotation to the right 80°, rotation to the left 80°, lateral binding 40° right and 40° left. Reflexes, biceps and triceps 2+ and equal. Reflexes, patellar 1+ right (atrophy) 2+ left, Achilles 2+ left, 0+ right (fusion). Sensation is decreased over the lateral border of the foot on the right side. The hindfoot is fused as is the ankle joint. * * * The claimant carries a cane in the right hand and wears a single upright brace on the right lower extremity as noted above. There is no tenderness over the chest wall. Both knees demonstrate normal range of motion."
{¶ 21} As to the right shoulder, Dr. Amendt reported:
{¶ 22} "* * * The right shoulder range of motion, forward flexion is 160° with pain. With the arm held at 90° of abduction, internal rotation is 70°, external rotation 70°, extension 50°, abduction is 140°."
{¶ 23} 6. In addition, in regard to the hands and wrists, he observed:
{¶ 24} "* * * He has heavy calluses over the palmar surfaces of both hands and notes some numbness at times over the thumb, index, long ring and small fingers bilaterally. There is no thenar or hypothenar atrophy and well healed surgical scars over the thenar crease. * * *"
{¶ 25} 7. Dr. Amendt stated a diagnosis of "Crushed right foot; fractured top right foot; lumbar, thoracic and cervical strains; bilateral carpal tunnel syndrome; contusion chest wall; bilateral patellofemoral disease of both knees; arthrosis, right shoulder." These are the same conditions he listed as the claim allowances in the report's heading. Regarding impairment of the whole body caused by each condition, he opined:
{¶ 26} "* * * His impairment, based upon AMA Guides * * * is rated as follows. For crushed right foot, fractured top right foot 15% impairment. Lumbar, thoracic and cervical strains — 10% impairment (DRE Cervicothoracic and Lumbosacral Category's II). Bilateral carpal tunnel syndrome — 5%. Contusion chest wall — 0%. Bilateral patellofemoral disease of both knees — 5% + 5%. Arthrosis right shoulder — 5% for a total whole person rating of 38%."
{¶ 27} 8. In his conclusion, Dr. Amendt opined that claimant could perform sedentary work.
{¶ 28} 9. On an occupational checklist, Dr. Amendt indicated that claimant could lift up to ten pounds, sit for five to eight hours, stand from zero to three hours, and walk from zero to three hours. He prohibited climbing stairs and ladders but indicated that claimant could occasionally use both feet to operate controls. Dr. Amendt indicated that claimant could reach overhead with the left arm on an unrestricted basis but with the right arm only occasionally. Reaching at knee level was only occasional but reaching at waist level was unrestricted, while reaching to the floor was prohibited. In regard to using his hands to handle, seize, hold, grasp, or turn objects, Dr. Amendt indicated that claimant was unrestricted as to the types of motions but could do none of them repetitively. He also found that claimant could occasionally crouch, stoop, bend, and kneel.
{¶ 29} 10. A vocational assessment was prepared by Christy Vogelsang in June 2000, finding claimant's age to a positive factor as well as his education. She noted the work history and found it indicated entry-level academic skills. She listed particular jobs that could perform on the basis of Dr. Amendt's report.
{¶ 30} 11. In May 2001, a PTD hearing was held, resulting in a denial of compensation:
{¶ 31} "[H]e is unable to return to his former position of employment as maintenance mechanic due to allowed conditions in the claim.
{¶ 32} "Dr. Amendt * * * opined that the claimant is capable of engaging in sustained remunerative work activities in a sedentary setting. Dr. Amendt opined that the claimant can sit 5-8 hours in an eight hour workday. Dr. Amendt opined that the claimant can lift up to 10 pounds for 0-3 hours in an eight hour workday. Dr. Amendt opined that [t]he claimant can crouch, stoop, bend and kneel occasionally (up to 1/3 of time). Dr. Amendt further opined that the claimant is unrestricted in his handling (seize, hold, grasp, turn) of objects provided it is non-repetitive motion.
{¶ 33} "The Staff Hearing Officer finds that the capabilities listed by Dr. Amendt are the capabilities the claimant has as a result of recognized orthopedic conditions in the claim.
{¶ 34} "The Staff Hearing Officer finds that the claimant is a middle-aged individual of 49 years of age who has a 12th grade education. The Staff Hearing Officer finds that the claimant has worked as a maintenance mechanic, construction worker and as a farm laborer.
{¶ 35} "Ms. Christy Vogelsang * * * opined * * * that claimant's age, eduction and work history are positive factors for claimant in finding employment. Ms. Vogelsang opined that the claimant has demonstrated academic skills at entry level in prior jobs. Ms. Vogelsang opined that claimant's strong work history and his level of skill in previous work are strengths claimant has in securing future employment. Ms. Vogelsang opined that in claimant's adjusted worker trait profile, the claimant rated above average in spatial aptitude, form perception and manual dexterity. Ms. Vogelsang further opined that the claimant rated average in general learning ability, verbal aptitude and numerical aptitude. Ms. Vogelsang opined in her deposition that claimant has tested at academic levels that are below his actual educational level. Ms. Vogelsang opined when accepting the residual functional capacities of Dr. Amendt, that the claimant could do a representative sample of jobs including press operator, repairer, and inspector.
{¶ 36} "The Staff Hearing Officer finds that claimant's middle age of 49 years and his ability to read and write are assets claimant has in securing future employment. The Staff Hearing Officer finds that claimant's age will be an asset to claimant which will allow him to learn new work rules and procedures. The Staff Hearing Officer finds that claimant demonstrated academic skills in prior jobs is most reflective of claimant's actual academic ability.
{¶ 37} "Therefore, based upon the above enumerated physical capabilities and the non-medical disability factors, the Staff Hearing Officer finds that the claimant is capable of performing sustained remunerative employment.
{¶ 38} "* * *
{¶ 39} "This order is based on reports of Dr. Amendt and Ms. Vogelsang and deposition of Ms. Vogelsang taken on 2-7-01."
Conclusions of Law:
{¶ 40} In this original action in mandamus, claimant argues that the commission abused its discretion in denying PTD compensation. Numerous judicial decisions set forth the principles governing this court's review of commission orders, including State ex rel. Noll v. Indus. Comm. (1991),57 Ohio St.3d 203; State ex rel. Stephenson v. Indus. Comm. (1987), 31 Ohio St.3d 167; State ex rel. Ellis v. McGraw Edison Co. (1993), 66 Ohio St.3d 92; State ex rel. Pass v. C.S.T. Extraction Co. (1996),74 Ohio St.3d 373; State ex rel. Ewart v. Indus. Comm. (1996), 76 Ohio St.3d 139; and State ex rel. Wilson v. Indus. Comm. (1997), 80 Ohio St.3d 250.
{¶ 41} In the present action, claimant raises numerous issues, including that Dr. Amendt's report was not evidence on which the commission could rely because: (1) he gave an opinion as to impairment from carpal syndrome but failed to perform a physical examination of the affected areas; (2) his assessment of 15% whole-body impairment for foot impairment in a PTD examination was inconsistent with the commission's prior PPD award for loss of use of the right foot; (3) his opinion that claimant could occasionally operate a foot control with the right foot was inconsistent with his findings for the right foot and/or the PPD award for loss of use of the right foot; (4) his opinion that claimant could stand and walk for zero to three hours per workday and occasionally crouch, stoop, bend and kneel, was inconsistent with claimant's use of a brace and cane; and (5) that Dr. Amendt's opinion that claimant can use his upper extremities to reach overhead and to the waist and knee levels is inconsistent with claimant's use of a brace and cane.
{¶ 42} Further, in regard to Ms. Vogelsang's report, claimant argues that the commission could not rely on her vocational opinions because: (1) she did not accept as fact the vocational testing provided by claimant's vocational expert; (2) six of the jobs she listed as job options within Dr. Amendt's restrictions actually require "light" exertion, while Dr. Amendt limited claimant to "sedentary" employment; and (3) two of the jobs listed by Ms. Vogelsang as job options require bilateral use of the hands, which claimant did not have due to his bilateral carpal tunnel syndrome.
{¶ 43} The magistrate finds merit in two of claimant's arguments. First, Dr. Amendt's opinion that claimant could operate a foot control with his right foot for a third of the workday was fatally inconsistent with his findings regarding the foot and with his recognition that claimant had been compensated for the loss of use of the foot. In the narrative report, Dr. Amendt assessed a whole-body impairment of 15% based solely on the right foot, which indicates substantial impairment of that foot. Further, he acknowledged that the commission had awarded compensation for loss of use of the foot. Thus, his indication on the capacities checklist — that claimant could operate foot controls with the right foot for up to one third of the workday — was patently at odds with the narrative report. See, generally, State ex rel. Taylor v. Indus. Comm. (1995), 71 Ohio St.3d 582; State ex rel. Lopez v. Indus. Comm. (1994), 69 Ohio St.3d 445.
{¶ 44} In addition, Ms. Vogelsang's report is internally inconsistent in that she purported to apply Dr. Amendt's restriction to sedentary work but then listed job options of which the majority required "light" strength, according to the Dictionary of Occupational Titles ("DOT"). In reaching this conclusion, the magistrate acknowledges that not every job with the same title must involve the same duties, and further accepts that the DOT is not conclusive as to each and every job's requirements. Nonetheless, Ms. Vogelsang's listing of jobs options, in which six of eight are officially recognized as "light" jobs rather than "sedentary," renders her report unreliable as a matter of law.
{¶ 45} The remainder of the arguments are not sufficient to require a writ in and of themselves. First, claimant is mistaken in asserting that Dr. Amendt failed to perform a physical examination of claimant's hands and wrists in regard to carpal tunnel syndrome. Indeed, in his reply brief, claimant retreats to the position that Dr. Amendt's examination of the wrists/hands was not thorough. However, claimant cites no law to support this argument and the magistrate is aware of none.
{¶ 46} Second, claimant argues that Dr. Amendt was barred from finding a whole-body impairment of 15% based on the foot injuries. However, claimant appears to confuse the percentage of impairment of the foot with the percentage of impairment of the whole body based on the foot. For example, a 100% loss of the hand by amputation would not be equivalent to a 100% impairment of the body as a whole. Further, the magistrate is not aware of a duty on the part of the commission or examining physician in a PTD proceeding to adopt the percentage of impairment granted under R.C. 4123.57.
{¶ 47} Claimant also argues that the use of a brace and cane is inconsistent with various opinions expressed by Dr. Amendt. However, these arguments are flawed. First of all, Dr. Amendt merely noted that claimant used a brace and cane; he did not conclude that the allowed conditions required these aids. Further, claimant has used the brace since childhood due to polio and it did not prevent him from engaging in a variety of construction-related work. Second, the use of a brace and cane, even if required by the allowed conditions, would not be fatally inconsistent with a medical opinion that claimant can walk/stand more than zero hours per day but less than three hours. Last, although claimant asserts that the use of a brace and cane is fatally inconsistent with using the upper extremities for reaching, claimant cites no medical or legal authority to establish this relationship. At oral argument, claimant explained that a standing person would have difficulty reaching, etc., if he was using a cane and brace, but the brace was for a nonallowed condition, and the fact remains that Dr. Amendt limited claimant to sedentary work with only limited walking or standing. This, his listing of capacities for the upper extremities was not inconsistent as a matter of law with claimant's use of a brace and cane. In addition, the magistrate finds no improper consideration of the nonallowed polio in Dr. Amendt's report.
{¶ 48} As to the reading and math scores obtained by claimant's vocational expert upon testing, the magistrate finds no reason that the commission or its vocational consultant were required as a matter of law to adopt them as binding. See, e.g., State ex rel. Scott v. Indus. Comm. (2002), Franklin App. No. 01AP-822, 2002-Ohio-2240, Appendix at pgs. A-7 to A-8.
{¶ 49} In addition, the magistrate finds that a vocational assessor may provide information from the DOT regarding the "General Educational Development" category for each of a claimant's prior job titles. These G.E.D. ratings indicate the level of educational development typically required for a job. However, as indicated above, not every job with the same title has the same duties. Therefore, where the commission accepts a claimant's testimony that his job duties were substantially different from the description in the DOT, the commission would abuse its discretion if it were to rely on the general education development or other category listed in the DOT. That is, where the commission accepts evidence that a particular claimant's job was significantly different from the job as described in the DOT, it must disregard the DOT's categories and descriptions for that job.
{¶ 50} However, the facts in the unreported memorandum decision cited by claimant are vastly different, in that the claimant in that case was a sixty-year-old man with a third-grade education who asserted that he could not read or write, thus indicating that reliance on the DOT's description of the usual duties and abilities of a carpet installer was improper. In contrast, the claimant in the present action was 49 years old, graduated from high school, stated that he could read, write and do basic math, and that he worked for more than twelve years as a mechanic. While the skill levels of mechanics may vary, the commission (and the vocational assessor) could reasonably conclude that claimant's work as a mechanic demonstrated possession of skills, intelligence, and an ability to solve problems. In sum, claimant has not demonstrated that Ms. Vogelsang's report was defective because she relied on the DOT regarding skills and abilities usually associated with claimant's past jobs.
{¶ 51} Last, the magistrate finds no defect in the finding that, based on Dr. Amendt's report, claimant could do work involving use of both hands. Dr. Amendt did not say that claimant was unable to use both hands but only that claimant could not perform hand motions repetitively. In sum, Dr. Amendt's report does not prohibit the bilateral use of the hands, nor did he address questions of "dexterity." Thus, a vocational expert could opine that, based on Dr. Amendt's restrictions, the worker could use both hands to perform sedentary work as long as it did require repetitive hand use.
{¶ 52} Nonetheless, as stated above, the reports of Ms. Vogelsang and Dr. Amendt included flaws that warrant issuance of a limited writ of mandamus. On remand, the commission may not rely on the report of Ms. Vogelsang; the magistrate finds that her errors tainted the reliability of the entire report and serve to remove it from evidentiary consideration. In contrast, the clinical findings of Dr. Amendt on examination and the text of his narrative report are not defective as a matter of law. To the extent the commission would choose on remand to rely on Dr. Amendt's findings and opinions, it may not rely on his checklist opinion regarding foot pedals. Also, his opinion on the checklist as to upper extremities must be read in conjunction with his handwritten limitation placed on the form, in which he indicated that, although the types of hand motions were unrestricted, claimant was prohibited from performing any repetitive motions with his hands.
{¶ 53} The magistrate recommends that this court grant a writ of mandamus directing the commission to vacate its denial of PTD compensation, hold a new PTD hearing, and issue a new order granting or denying PTD.